**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Trent Eiseman, | |
| Plaintiff, | Case No. 1:25-cv-00270 |
| vs. | |
| Patterson Dental Supply, Inc., | |
| Defendant. | |

**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS**

[¶1]     THIS MATTER comes before the Court upon a Motion to Dismiss filed by the Defendant Patterson Dental Supply, Inc. ("Patterson Dental"), on January 23, 2026. Doc. No. 6. Plaintiff Trent Eiseman ("Eiseman") filed a Response on March 20, 2026. Doc. No. 11. Patterson Dental filed a Reply on April 3, 2026. Doc. No. 12. For the reasons set forth below, the Motion to Dismiss is **GRANTED, in part, and DENIED, in part**.

**BACKGROUND**

[¶2]     For nearly twenty years, Eiseman worked in sales for Patterson Dental on a commission basis. Doc. No. 1, ¶¶ 9–10. In March 2023, Eiseman was on his way from Bismarck to Beulah, North Dakota, on Interstate 94 performing work-related business on behalf of Patterson Dental when a meth user driving a vehicle made an illegal U-turn and struck Eiseman's vehicle head-on. Id. at ¶ 10. The accident left Eiseman with a traumatic brain injury ("TBI"). Id. at ¶ 10. For a year after the accident, Eiseman went through significant physical, occupational, and vision therapies two to three days per week. Id. at ¶ 11.

1

[¶3]     Despite being fully aware of the nature and extent of Eiseman's injuries, Patterson Dental required Eiseman to travel by car to Minnesota to attend a dental convention over his objection. Id. at ¶ 13. Because of his injuries, Eiseman had to make the trip from Bismarck to Minneapolis over the course of two days, having to stop every twenty minutes to take lengthy breaks. Id.

[¶4]     Eiseman requested Patterson Dental provide him with additional accommodations for the TBI, including asking that his customers be reduced to more manageable levels and allowing him to meet with customers via Teams calls, phone calls and emails. Id. at ¶ 14. Although Patterson Dental initially reduced Eiseman's workload, it later assigned him numerous customers from the "house account," many of whom were not purchasing much if any product. Id. This further burdened Eiseman because he needed to do the work to service these customers but would not derive any sales from this work. Id. When Eiseman emailed his superiors about the issue, their response was to assign him even more essentially worthless accounts. Id. These actions lowered Eiseman's sales numbers, making him look ineffective with his accounts and less valuable to the sales team. Id.

[¶5]     Following the TBI, Eiseman claims Patterson Dental treated him differently than other similarly situated non-disabled sales employees working in North Dakota and Minnesota. Id. at ¶ 15. This includes one manager saying she was "watching him" and another manager telling him he could not carry a tool bag or perform repairs for customers anymore after the TBI. Id. Other similarly-situated sales employees were not subject to this kind of treatment. Id.

[¶6]     Eiseman also claims he is owed over $100,000 in earned commissions and reimbursements for his sales work which Patterson Dental refuses to pay. Id. at ¶ 17. Approximately $20,000 of these owed amounts are day-to-day sales commissions and reimbursements that Patterson Dental should have paid him. Id. at ¶ 26. The rest mostly derives from two high-value sales projects. Id.

2

at ¶¶ 18, 21. The first project was for sales to Northland Community Health Center in Turtle Lake, North Dakota and Ray, North Dakota ("Northland Project"). Id. at ¶ 18. Despite earning approximately $40,000 to $50,000 under its written commission plan, Patterson Dental refused and still refuses to pay Eiseman his commission for the Northland Project. Id. at ¶¶ 18–19. The second project was for sales to the Three Affiliated Tribes Minne Tohe Health Center in New Town, North Dakota ("New Town Project"). Id. at ¶ 20. Eiseman began working on the New Town Project approximately a decade before it was completed in 2024. Id. at ¶ 21. Again, despite earning approximately $80,000 to $100,000 in commissions for his work on the New Town Project, Patterson Dental refused and still refuses to pay Eiseman his commission. Id. at ¶ 20.

[¶7]    Instead, Eiseman claims Patterson Dental zeroed out the New Town Project invoice, credited back to the customer the payment previously received, and then re-issued the invoice for the project. Id. at ¶ 22. These "creative accounting" maneuvers removed Eiseman from the invoicing and sales paperwork, effectively erasing his work and earned commission on the New Town Project. Id. at ¶ 23. According to Eiseman, he did not know about Patterson Dental's "creative accounting" concerning the New Town Project until around late November 2024, when he learned about it "through the proverbial grapevine." Id. at ¶ 25. Beyond these hidden maneuvers on the New Town Project, Eiseman asserts Patterson Dental routinely cooked the books, changing commission metrics and sales dates after the fact to benefit executives and managers at the expense of ordinary sales employees like Eiseman. Id. at ¶ 33.

[¶8]    When Eiseman began asking questions to his superiors, including requests for commission summaries and adjustments, he was fired shortly thereafter in September 2024. Id. at ¶¶ 9, 28. Eiseman initially believed he would be paid his outstanding commissions and severance by late November 2024 because other similarly situated non-disabled employees were paid these within

3

a similar timeframe. Id. at ¶ 25. However, following his termination, Patterson Dental never offered or paid Eiseman any outstanding commissions or severance. Id. at ¶¶ 30–31.

[¶9]    Similarly, one of Patterson Dental's company benefits was to provide LifeLock identity theft protection to employees. Id. at ¶ 35. However, Eiseman claims Patterson Dental never activated his LifeLock protection and he had his identity stolen in 2024. Id. at ¶ 36. Since his identity was stolen, Eiseman has incurred costs and expenses relating to attempts to reverse the identity theft and has been sued by creditors for the charges incurred by the identity thieves pretending to be Eiseman. Id. at ¶ 37. According to Eiseman, his FTC identity theft report currently exceeds $200,000 in fraudulent transactions. Id. Since approximately June 2024, Eiseman has demanded Patterson Dental provide him with his LifeLock protection, but Patterson Dental has not provided the protection and stated in writing that his claim regarding LifeLock coverage was "resolved." Id. at ¶ 38.

[¶10]   Following his termination, Eiseman filed a Complaint against Patterson Dental. Id. The Complaint contains four counts against Patterson Dental, namely: (1) Unlawful Discrimination and Retaliation Under the ADA and North Dakota Law, (2) Breaches of Statutory and Contractual Obligations, (3) Fraud and Deceit, and (4) Unjust Enrichment. Id. at ¶¶ 41–60. Patterson Dental has moved to dismiss Counts One, Three, and Four of the Complaint. Doc. No. 6.

## DISCUSSION

### I.    Motion to Dismiss Standard

[¶11]   Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may file a motion to dismiss asserting the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion, a complaint

4

must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation modified). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint does not need detailed factual allegations, but it must contain more than labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[¶12]   The Court must accept a complaint's factual allegations as true, but it does not need to accept a complaint's legal conclusions or "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 678. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. However, the determination of whether a complaint states a claim upon which relief can be granted is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Dismissal will not be granted unless it appears beyond doubt the plaintiff cannot provide a set of facts to support a claim that would entitle him to relief. Ulrich v. Pope Cnty., 715 F.3d 1054, 1058 (8th Cir. 2013). The Court may look to materials that do not contradict the Complaint, as well as materials necessarily embraced by the pleadings. Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 931 (8th Cir. 2012).

> **II.     Count One: Unlawful Discrimination and Retaliation Under the ADA and North Dakota Law**

[¶13]   Patterson Dental argues Count One of the Complaint alleging Unlawful Discrimination and Retaliation under the ADA and North Dakota law should be dismissed because Eiseman failed to file his discrimination complaint with the North Dakota Department of Labor and Human Rights ("NDDOL") and the EEOC in the timeframe set by the corresponding state and federal statutes. Doc. No. 6-1, pp. 4–6. Eiseman responds that he timely raised the latest instance of continuing discrimination with state authorities. Doc. No. 11, p. 11.

[¶14]   Under North Dakota law, an employee alleging unlawful discrimination or retaliation "must file a complaint with the department within three hundred days after the alleged act of wrongdoing." N.D.C.C. § 34-01-20(4). Similarly, under federal law, a charge involving unlawful employment practices "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). However, if the individual alleging an unlawful employment practice "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." Id.

[¶15]   In this case, the date of the last discriminatory act occurred in September 2024, when Patterson Dental informed Eiseman that it was his last day at the company. Doc. No. 1, ¶ 9. Accordingly, Eiseman had three hundred days from the date of his September 2024 termination to file a discrimination complaint with the NDDOL under North Dakota law. N.D.C.C. § 34-01-20(4). Based on an unspecified September 2024 termination, Eiseman needed to file his complaint with the NDDOL by a specific date in July 2025 for it to be timely. Id. However, Eiseman did not file his complaint until August 27, 2025, past the noted deadline set by the North Dakota Century Code. See Doc. No. 6-3, p. 4.

[¶16]   Eiseman contends the last date of discrimination was November 15, 2024, two months after his termination, thereby extending the date by which he was required to file his discrimination complaint with the NDDOL. Id. at 2. In his Response, Eiseman justifies this later date by arguing that Patterson Dental's actions, before and after his termination, amounted to ongoing discrimination creating a hostile working environment for Eiseman. Doc. No. 11,

6

p. 4–11. Accordingly, the November 15, 2024 date represents the final act of discrimination that occurred as part of the hostile working environment, namely Patterson Dental's refusal to pay Eiseman the commissions he earned. Id.

[¶17]   However, the first mention of a hostile working environment occurs in Eiseman's Response filed in March 2026, approximately eighteen months after his termination and eight months past the deadline to file a discrimination complaint with the NDDOL. Id. His November 2025 Complaint and August 27, 2025 North Dakota discrimination complaint make no mention of a hostile working environment. Doc. Nos. 1; 6-3. In fact, Eiseman had the opportunity to claim a hostile working environment in the North Dakota discrimination complaint, but failed to check the box confirming that allegation. Doc. No. 6-3, p. 2. Taken together, these facts demonstrate Eiseman waived his right to file a discrimination complaint alleging a hostile working environment. See N.D. Cent. Code § 34-01-20(4). The Court will not permit Eiseman to amend his Complaint or recharacterize his discrimination claim as a hostile working environment claim through his Response to rescue the claim. See Thomas v. United Steelworkers Loc. 1938, 743 F.3d 1134, 1140 (8th Cir. 2014) (claims can only be modified through Rule 15 and cannot be modified through opposition briefs during motion practice). Accordingly, the proper date to refer to as the last date of discrimination remains September 2024, when Patterson Dental terminated Eiseman, rendering his state complaint untimely.

[¶18]   Because Eiseman's state complaint was untimely, it is beyond doubt the Eiseman cannot provide a set of facts to support a claim that would entitle him to relief on his state discrimination claim. Ulrich, 715 F.3d at 1058. The Court **GRANTS** Patterson Dental's request to dismiss Count One as to Eiseman's claim under North Dakota law.

7

[¶19]   However, the same is not true regarding Eiseman's federal claim. In the Complaint, Eiseman states that prior to filing a discrimination complaint with the NDDOL, he "submitted an ADA/Retaliation claim directly with the EEOC in 2024 but has lost his email communications with EEOC but believes he completed the grievance request." Doc. No. 1, ¶ 7. Nothing in Patterson Dental's Response challenges this statement or the deadline governing the federal ADA claim. Moreover, if Eiseman did in fact submit the federal claim before the North Dakota claim, then he had one hundred and eighty days from his termination to file his claim with the EEOC. See 42 U.S.C. § 2000e-5(e)(1). In that case, it remains plausible that Eiseman filed the ADA claim in the appropriate timeframe in 2024. See 42 U.S.C. § 2000e-5(e)(1). Consequently, it would be premature at this stage of litigation to dismiss Eiseman's ADA claim. Because Patterson Dental failed to properly challenge the ADA claim and it remains plausible Eiseman filed the ADA claim within the one-hundred-and-eighty-day deadline, the Court **DENIES** Patterson Dental's request to dismiss Count One as to the ADA claim. Ulrich, 715 F.3d at 1058.

### III.    Count Three: Fraud and Deceit

[¶20]   Patterson Dental argues Count Three of the Complaint should also be dismissed because Eiseman's fraud and deceit allegations are not pled with the specificity required under North Dakota law and the Federal Rules of Civil Procedure. Doc. No. 6-1, pp. 8–15. Eiseman asserts these claims are legally and factually sufficient. Doc. No. 11, pp. 11–18.

[¶21]   In North Dakota, fraud and deceit claims are governed by statute. See N.D.C.C. §§ 9–03–08; 9–10–02. "Technically, fraud under Section 9–03–08 of the North Dakota Century Code applies only when there is a contract between the parties, whereas deceit under Section 9–10–02 of the North Dakota Century Code applies when there is no contract between the parties." Nagel v. Sykes Realty, Inc., 400 F. Supp. 2d 1198, 1202 (D.N.D. 2005) (citing Dewey v. Lutz, 462

N.W.2d 435, 439 (N.D. 1990)). "However, the conduct prohibited under the separate statutory definitions of fraud and deceit is substantially identical." Dvorak v. American Family Mut. Ins. Co., 508 N.W.2d 329, 332 (N.D. 1993). Since a contract exists between the parties, namely the commission plan, Eiseman's claim in Count Three will be construed as a fraud claim.

[¶22]   Under the Century Code, fraud is defined as "acts committed by a party to the contract, or with the party's connivance, with intent to deceive another party thereto or to induce the other party to enter into the contract." N.D.C.C. § 9–03–08. To prevail on a claim for fraud, a plaintiff must show: (1) a contract between the parties, (2) misrepresentation of facts, suppression of facts, misleading another, or promising without an intent to perform, (3) reliance on the false or misleading representation; and (4) proof of actual damages proximately caused by the misrepresentation or nondisclosure. Northstar Founders, LLC v. Hayden Capital USA, LLC, 2014 ND 200, 855 N.W.2d 614, 626.

[¶23]   In addition to the Rule 12 pleading requirements of plausibility, claims for fraud must satisfy Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Eighth Circuit has held this particularity requires the plaintiff to "plead such facts as the time, place, and content of the defendant's false representation, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006). In other words, claims for fraud require a plaintiff to plead the "who, what, when, where, and how" to support the claim. Kuntz v. State, 2019 ND 46, ¶ 51, 923 N.W.2d 513, 528 (quoting BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007)).

[¶24]   In this case, Eiseman alleges Patterson Dental defrauded him on two grounds: (1) by using "creative accounting" maneuvers to avoid paying Eiseman the commissions he earned for the New

9

Town Project and (2) failing to activate his LifeLock identity protection and later allegedly informing him that his LifeLock account issues were "resolved." Doc. No. 1, ¶¶ 50–53.

### A. "Creative Accounting" Fraud Claim

[¶25]   Beginning with the "creative accounting" fraud claim, Eiseman fails to specify with particularity the "who, what, when, where, and how" of Patterson Dental's false representation to Eiseman. Kuntz, 923 N.W.2d at 528. When describing the nature of this fraud claim in his Response, Eiseman states Patterson Dental "had a commission plan, Eiseman earned a commission through a sale, and Patterson 'erased' Eiseman's commission and gave it to someone else without telling him." Doc. No. 11, p. 16. Put simply, Eiseman's contention is that Patterson Dental committed fraud by failing to abide by the terms of its commission plan. However, Eiseman fails to provide facts establishing that when Patterson Dental promised to pay him commissions for his work on projects, it did so with the preconceived intention to not abide by its commission plan to deceive Eiseman into completing additional projects for Patterson Dental. N.D.C.C. § 9–03–08; Northstar Founders, LLC, 855 N.W.2d at 626 (establishing the elements of fraud). Absent facts demonstrating Patterson Dental intended to deceive Eiseman to perform work it was not going to pay him commissions for, his claim for fraud cannot succeed as pled.

[¶26]   Moreover, a failure to pay amounts owed under a contract such as the commission plan is more accurately characterized as a breach of contract issue, not fraud. Even if a party's breach is accompanied by a malicious intent, it is insufficient to transform a breach of contract claim into a fraud claim. Pioneer Fuels, Inc. v. Montana-Dakota Utilities Co., a Div. of MDU Res. Grp., 474 N.W.2d 706, 710 (N.D. 1991) ("A breach of contract even if intentional, malicious, or in bad faith, is not enough to convert a contract action into a tort action"). Notably, Eiseman already alleges breach of contract in Count Two of the Complaint, including Patterson Dental's failure to pay the

10

commissions it allegedly owed Eiseman under the commission plan. Doc. No. 1, ¶¶ 44–48. Patterson Dental does not challenge Count Two in its Motion to Dismiss.

[¶27]    Since Eiseman's "creative accounting" fraud claim lacks facts demonstrating an intent to deceive, is essentially a breach of contract claim disguised as a fraud claim, and is duplicative of the allegations in Count Two of the Complaint, the Court **GRANTS** Patterson Dental's request to dismiss the "creative accounting" fraud claim.

### B.  LifeLock Fraud Claim

[¶28]    Similarly, Eiseman's fraud claim regarding the LifeLock identity theft coverage is more properly understood as a breach of contract claim, not a fraud claim. In his Response, when describing his LifeLock allegations, Eiseman states he "suffered harm for the lack of a Company benefit he should have had in 2024 when his identity was hacked, he was further damaged when he demanded the benefit be activated and Patterson refused to provide him, a Company employee, the benefit enjoyed by everyone else." Doc. No. 11, pp. 17–18. Like Eiseman's "creative accounting claim," a failure to provide a benefit owed under a contract or company policy is a breach of contract dispute, not a dispute over fraud. Pioneer Fuels, Inc., 474 N.W.2d at 710. As mentioned above, Eiseman already alleges breach of contract in Count Two of the Complaint, rendering this allegation unnecessarily duplicative. Doc. No. 1, ¶¶ 44–48.

[¶29]    Eiseman attempts to make his LifeLock claim sound more in terms of fraud by further alleging Patterson Dental lied to him when it told Eiseman his LifeLock coverage issues were "resolved." Doc. Nos 1, ¶ 38; 11, p. 18. However, Eiseman again fails to plead any facts, with sufficient particularity, to demonstrate Patterson Dental's statement regarding the status of his LifeLock coverage was an intentional misrepresentation. Kuntz, 2019 ND 46, ¶ 51, 923 N.W.2d at 528. A conclusory allegation that the alleged misrepresentation was "patently untrue" is

11

insufficient to establish that the representation was false, much less that it was intentionally false and intended to deceive Eiseman. See N.D.C.C. § 9–03–08; Northstar Founders, LLC, 855 N.W.2d at 626 (establishing the element of misrepresentation). One cannot infer fraud solely on the basis that the underlying statement was untrue. See City of Granville v. Kovash, Inc., 118 N.W.2d 354, 361 (N.D. 1962) ("[f]raud or deception never will be inferred from a mere mistake, without other circumstances"). Absent factual allegations showing Patterson Dental intended to deceive Eiseman when it told him his LifeLock coverage issue was "resolved," his claim for fraud cannot succeed as pled. First Union Nat. Bank v. RPB 2, LLC, 2004 ND 29, ¶ 23, 674 N.W.2d 1, 8 (holding that the plaintiff "failed to plead facts sufficient to demonstrate fraud" because his "own evidence does not reflect the necessary intent").

[¶30]   Additionally, according to the chronology set forth in the Complaint, the allegedly false statement that Eiseman's LifeLock coverage issue was "resolved" occurred after the theft of his identity. Doc. No. 1, ¶¶ 36–38. Because the statement was made after his identity was stolen, Eiseman cannot establish that relying on the statement proximately caused the damages he suffered as a result of the identity theft. Northstar Founders, LLC, 855 N.W.2d at 626. Since proximate causation and actual damages are essential elements of a tort action for fraud, this provides additional reason to dismiss Eiseman's fraud claim. Lang v. Schafer, 2000 ND 2, ¶ 8, 603 N.W.2d 904, 906 (quoting Sonnesyn v. Akin, 104 N.W. 1026, 1028 (N.D. 1905)); Northstar Founders, LLC, 855 N.W.2d at 626.

[¶31]   Since Eiseman's LifeLock fraud claim is essentially a breach of contract claim disguised as a fraud claim, lacks facts demonstrating an intent to deceive, and fails to satisfy the elements of proximate causation and actual damages, the Court **GRANTS** Patterson Dental's request to

dismiss the LifeLock fraud and deceit claim. Count Three of the Complaint is dismissed its entirety.

IV.    **Count Four: Unjust Enrichment**

[¶32]    Lastly, Patterson Dental argues Count Four of the Complaint should be dismissed because Eiseman cannot maintain an unjust enrichment claim while also claiming a contract exists between the parties. Doc. No. 6-1, pp. 15–16. Eiseman asserts he may plead unjust enrichment in the alternative, fearing Patterson Dental may attempt to deny the existence of the written commission plan. Doc. No. 11, pp. 18–19. The Eighth Circuit has held that "[s]o long as an adequate legal remedy exists, equitable remedies like unjust enrichment are not available." Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 742 F.3d 845, 854 (8th Cir. 2014) (citing ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 305 (Minn. 1996)). Count Four of Eiseman's Complaint would have this Court do just that by allowing the unjust enrichment claim to proceed despite Eiseman having access to a legal remedy via Count Two's breach of contract claim (for Patterson Dental's alleged failure to pay Eiseman the commissions it owes him under the commission plan). Doc. No. 1, ¶¶ 44–48. Consequently, the Court **GRANTS** Patterson Dental's request to dismiss Count Four of the Complaint. See Loftness Specialized Farm Equip., Inc., 742 F.3d at 854–55 (affirming a Rule 12 dismissal of an unjust enrichment claim and holding the counterclaimants were not entitled to plead unjust enrichment in the alternative because the parties' relationships were governed by existing contracts, "making unjust enrichment an unavailable remedy.").

**CONCLUSION**

[¶33]    Based on the foregoing, Patterson Dental's Motion to Dismiss is **GRANTED, in part, and DENIED, in part**. The part of Count One alleging unlawful discrimination and retaliation under

13

North Dakota law is **DISMISSED with prejudice**. Patterson Dental's request to dismiss the part of Count One alleging unlawful discrimination and retaliation under the ADA is **DENIED**. Counts Three and Four are **DISMISSED with prejudice** in their entirety.

[¶34]  **IT IS SO ORDERED**.

DATED July 27, 2026.

Daniel M. Traynor, District Judge
United States District Court